UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RANDI GLAZER,                                :

                              Plaintiff,     :

       -against-                            :

FIREMAN'S FUND INSURANCE         :
COMPANY, and HAROLD FOWLKES,
individually,                                   :

                           Defendants.    :

-------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/4/12
```

**MEMORANDUM**
**DECISION AND ORDER**

11 Civ. 4374 (PGG) (FM)

**FRANK MAAS,** United States Magistrate Judge.

        In this employment discrimination action, plaintiff Randi Glazer ("Glazer"), a white Jewish female, alleges that defendants Fireman's Fund Insurance Company and Harold Fowlkes (together, "Fireman's Fund") unlawfully retaliated against her because she complained about discrimination against non-African Americans and terminated her because of her religion. (See ECF No. 1 (Compl.)). On January 17, 2012, Judge Gardephe referred the case to me for the limited purpose of resolving a discovery dispute between Fireman's Fund and non-party LivePerson, Inc. ("LivePerson") (ECF No. 13).

I.    Relevant Facts

        On or about December 12, 2011, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Fireman's Fund served LivePerson with a subpoena duces tecum. The subpoena directed LivePerson to produce:

> any documents concerning the account of [Glazer] with
> LivePerson . . . , including but not limited to: (a) registration
> form, profile, and/or correspondences completed or submitted
> by Glazer; (b) any and all communications between Glazer
> and LivePerson experts, including chat and email
> communications; (c) any and all transcripts for live chat
> sessions between Glazer and LivePerson experts; and (d) any
> and all itemized billing records, statements and/or invoices for
> Glazer's LivePerson account.

(Joint letter to Judge Gardephe from David Lurie and Jacob Oslick, Esqs., dated Jan. 9, 2012 ("Joint Letter"), Ex. A).

LivePerson is a "web site that is a platform for on-line advice and professional consulting services." (Letter to the Court from Mr. Lurie, dated Feb. 1, 2012 ("Lurie Letter"), Ex. C). Among the "professional consulting services" available through LivePerson are sessions with online psychics.[1] Glazer apparently frequently consulted with psychics via LivePerson and emailed excerpts of some of those online "chats" to her work email account. After reviewing those excerpts, Fireman's Fund concluded that "every single one of them is relevant to one or more issues in this case." (See letter to the Court from Mr. Oslick, dated Feb. 1, 2012 ("Oslick Letter I"), at 1). Those issues include Glazer's work performance, relationships with co-workers, views regarding her treatment by Fireman's Fund, emotional state before, during, and after her employment, efforts to

---

[1] LivePerson also offers online communications with attorneys. See http://www.liveperson.com/experts (last visited Mar. 30, 2012). There is no suggestion, however, that Glazer ever used LivePerson to engage in attorney-client communications.

mitigate damages, and personal beliefs about African-Americans. (Id. at 1-2).[2] Accordingly, Fireman's Fund served a subpoena requiring LivePerson to produce transcripts of all of her LivePerson communications, as well as her billing records. Glazer contends that she stopped using LivePerson "in or about summer 2009," and that she closed her account in November 2011. (Aff. of Randi Glazer, sworn to on Feb. 1, 2012 ("Glazer Aff."), ¶¶ 6-9).

LivePerson seeks to quash the subpoena on several grounds, including the fact "that [Glazer] can readily access and expressly agreed to produce all of the materials [Fireman's Fund] seek[s]." (Joint Letter at 1). Although Glazer concedes that she initially agreed to open a new account for purposes of accessing her old chats, she since has retracted her offer to do so because she "deleted all of the contents of her account that could reasonably be considered . . . relevant to this matter a number of years ago." (Letter to the Court from Marjorie Mesidor, Esq., dated Jan. 25, 2012, at 1). Glazer thus apparently considers it significant that her chats were no longer immediately accessible to her before this suit was filed. (Id.).

On January 26, 2012, the Court held a discovery conference, during which I directed the parties and LivePerson to submit letters addressing certain issues. (See ECF

---

[2] Fireman's Fund contends that it sought the requested communications from Glazer before serving the subpoena on LivePerson. Indeed, Fireman's Fund's initial document demand requested "all documents concerning communications . . . about the subject matter of this lawsuit, or the facts, damages, and injuries alleged in the Complaint," as well as documents concerning communications relating to Glazer's job performance, professional and personal relationships with coworkers and reports, and efforts to mitigate damages. (Oslick Letter I at 5).

No. 20). In its submissions, LivePerson confirmed its representation at the conference that if Glazer were to open a new LivePerson account, "all such records that were previously available to [her] – including records of chats that she may have deleted from her account – could be retrieved and linked to the interface of her new member account." (Lurie Letter at 1). LivePerson further noted that Glazer had "received or engaged in a substantial number of communications with experts for which she did not provide payment." (Id.). LivePerson indicated that Glazer would not be able to access these free chats, although LivePerson's technical staff could access transcripts of the free chats through an internal interface. (Id.).

II.   Discussion

   A.   Stored Communications Act

Glazer contends that the Stored Communications Act, 18 U.S.C. § 2701, et seq. ("SCA"), proscribes any effort to have LivePerson produce transcripts of Glazer's chats. The SCA requires that an entity that provides an electronic communication service ("ECS") "not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Similarly, a remote computing service ("RCS") provider may not "knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service." Id. § 2702(a)(2); see also Crispin v. Christian Audigier, Inc., 717 F. Supp. 2d 965, 972-73 (C.D. Cal. 2010) (distinguishing ECS and RCS providers). ECS and RCS providers may, however, divulge the contents of a communication with the "lawful consent" of the

4

originator or an intended recipient of that communication. 18 U.S.C. § 2702(b)(3). Courts have found that email providers and social networking websites are either ECS or RCS providers, or both. See, e.g., Theofel v. Farey-Jones, 359 F.3d 1066, 1077 (9th Cir. 2004) (provider of email services is an ECS); Crispin, 717 F. Supp. 2d at 982, 990 (Facebook and MySpace are ECS and RCS providers); United States v. Weaver, 636 F. Supp. 2d 769, 770 (C.D. Ill. 2009) (Microsoft, which provides email services through Hotmail, is both an ECS and RCS provider).

Here, LivePerson appears to be either an ECS or RCS provider, or both, because it facilitates electronic communications between users and experts and stores those communications. See Crispin, 717 F. Supp. 2d at 987. There is some question, however, whether Glazer's communications are "electronically stored" by LivePerson within the meaning of the SCA.[3]

It also is unclear whether Glazer gave LivePerson her "lawful consent" to divulge the contents of her online communications prior to the time she began to communicate with LivePerson experts. See 18 U.S.C. § 2702(b)(3). The LivePerson Member Terms and Conditions, (Lurie Letter Ex. C ("Terms and Conditions")), contain inconsistent provisions with respect to the confidentiality of communications between

---

[3] The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and . . . any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(A)-(B); see also 18 U.S.C. § 2711(1) ("the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section").

LivePerson members and experts. Under the heading "Member's Conduct," the Terms and Conditions provide that:

> Member agrees that any information or content that he or she posts or transmits or receives through LivePerson.com will not be considered confidential. Member grants LivePerson.com an unlimited, irrevocable, royalty-free license to use, reproduce, display, edit, copy, transmit, publicly perform, create derivative works, or communicate to the public any such information and content on a world-wide basis.

(Id.). In contrast, under the heading "Privacy," the Terms and Conditions provide that communications between members and experts "are confidential, personal and private unless both the Member and the Expert agree to other distribution." (Id.).

The Court need not determine whether Glazer's communications are electronically stored, or whether Glazer consented to the disclosure of her LivePerson chats by agreeing to the Terms and Conditions, because it may simply direct that she consent to disclosure if the chats are likely to contain information relevant to this case. See, e.g., In re Air Crash near Clarence Ctr., N.Y., on Feb. 12, 2009, Nos. 09-md-2085, 09-CV-961S, 2011 WL 6370189, at *6 (W.D.N.Y. Dec. 20, 2011) (directing plaintiff to produce relevant electronic communications, including "social media accounts, emails, text messages, and instant messages," and noting that the defendant may request written authorizations to obtain such communications from third parties if the plaintiff's production is insufficient); EEOC v. Simply Storage Mgmt., LLC, 270 F.R.D. 430, 434 (S.D. Ind. 2010) (Content from social networking websites "is not shielded from

discovery simply because it is 'locked' or 'private.' Although privacy concerns may be germane to the question of whether requested discovery is burdensome or oppressive and whether it has been sought for a proper purpose in the litigation, a person's expectation and intent that her communications be maintained as private is not a legitimate basis for shielding those communications from discovery."); Romano v. Steelcase, Inc., 907 N.Y.S.2d 650, 657 (Sup. Ct. Suffolk County 2010) (requiring personal injury plaintiff to give defendant a properly-executed consent and authorization for her "Facebook and MySpace records, including any records previously deleted or archived by said operators"). Indeed, even if the Court were to conclude that the SCA is inapplicable to the discovery that Fireman's Fund seeks, it would make more sense to require that Glazer produce the relevant communications herself, with LivePerson needing to do so only to the extent that Glazer cannot.

    B.    <u>Paid Chats</u>

In light of the fact that LivePerson can grant Glazer access to all of her paid chats – including those she deleted – if she opens a new account, the Court directs Glazer to create such a new account. Glazer and her counsel further are directed to retrieve all of her available chat transcripts and produce electronic copies of them to Fireman's Fund.

I have not imposed any subject matter restrictions on the chat transcripts to be produced because I have reviewed the excerpts sent to me by Fireman's Fund and find that most, if not all, of them contain information that is relevant for at least discovery purposes. For this reason, Glazer is directed to turn over to Fireman's Fund promptly

copies of all nonprivileged communications that she engaged in over LivePerson from February 4, 2008 (the date she began working for Fireman's Fund), through the closing of her account. Additionally, in the unlikely event that Glazer believes any documents may be withheld on privilege grounds, she must provide Fireman's Fund with a privilege log.

C.  Free Chats

The chat excerpts furnished to the Court suggest that at least some of the "communications with experts for which [Glazer] did not provide payment" consisted of communications made during a brief interval at the beginning of each session when Glazer was permitted to chat with the expert without providing payment. It is unclear whether, and to what extent, Glazer also engaged in additional communications for which she did not pay. If Glazer is unable to retrieve any unpaid chats by opening a new account, Fireman's Fund may ask that Glazer be directed to provide a written authorization for LivePerson to produce the additional transcripts. The Court will not entertain such a request, however, until after Glazer has turned over copies of her paid chats. Furthermore, should the Court grant Fireman's Fund's request that Glazer supply an authorization, Fireman's Fund will be required to bear the reasonable costs incurred by LivePerson in producing the transcripts.

D.  Billing Records

Fireman's Fund also seeks the production of Glazer's LivePerson billing records "as evidence of how much time [Glazer] spent chatting with psychics," and to "identify which transcripts are not accessible in their original format because [Glazer]

8


deleted them." (Oslick Letter I at 3). LivePerson has represented that once Glazer opens a new account, she will be able to access all her paid chats, including those she deleted. Moreover, the transcripts of those chats will contain date and time stamps. (See Joint Letter at 4 n.4; Lurie Letter at 1). LivePerson consequently will not be required to produce any billing records.

E.  Fireman's Fund's Additional Discovery Demands

On February 2, 2012, Fireman's Fund submitted a letter which alleges that Glazer has communicated with online psychics as recently as January 2012 through websites other than LivePerson. (Letter to the Court from Mr. Oslick, dated Feb. 2, 2012, at 1). Fireman's Fund requests that Glazer therefore be required to produce "any data or documents" in her possession or control "concerning her communications with psychics from February 4, 2008 to the present, regardless of whether these psychics were affiliated with LivePerson." (Id. at 2 (emphasis in original)).

There is no evidence that Glazer sent any communications with psychics unaffiliated with LivePerson to her work email address, or that any of those communications contain statements relevant to the issues in this case. Furthermore, because Fireman's Fund will apparently receive hundreds of transcripts of LivePerson conversations, it seems likely that whatever information Fireman's Fund might unearth regarding additional psychics would be cumulative. For these reasons, Fireman's Fund's request for this further discovery is denied.

F.  Deposition Priority

Fireman's Fund also requests that Glazer's deposition occur prior to the depositions of Fireman's Fund's witnesses. (See Oslick Letter I at 8). The present discovery dispute arose, in large part, because Glazer chose to close her LivePerson account after she commenced this litigation. (See Glazer Aff. ¶ 7). To ensure that Glazer does not unfairly benefit from any delay in discovery that is attributable to her actions, the Court grants Fireman's Fund's request that Glazer be deposed first.

III.  Conclusion

Within ten days, Glazer shall create a new LivePerson account and request that her deleted chats be restored. She and her counsel shall thereafter promptly turn over to Fireman's Fund copies of all her LivePerson chats. Additionally, any documents withheld on privilege grounds must be set forth on a privilege log that complies with Local Civil Rule 26.2. Fireman's Fund requests for billing records and additional discovery concerning psychics unaffiliated with LivePerson are denied. Finally, Fireman's Fund's request that Glazer be deposed before any Fireman's Fund witnesses are deposed is granted.

SO ORDERED.

Dated:  New York, New York
        April 4, 2012

/s/ Frank Maas
FRANK MAAS
United States Magistrate Judge

10

Copies to:

Honorable Paul G. Gardephe
United States District Judge

Marjorie Mesidor, Esq.
Phillips & Phillips
Fax: (212) 587-4169

Jacob Oslick, Esq.
Seyfarth Shaw, LLP
Fax: (212) 218-5526

David R. Lurie, Esq.
Satterlee Stephens Burke & Burke LLP
Fax: (212) 818-9606